UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
ORLANDO DIVISION

GWEN MICHELLE CHESTER,

    Plaintiff,

v.                                                     Case No:   6:15-cv-0097-Orl-22TBS

COMMISSIONER OF SOCIAL
SECURITY,

    Defendant.

## REPORT AND RECOMMENDATION

Plaintiff Gwen Michelle Chester brings this action for judicial review of a final decision of the Commissioner of the Social Security Administration denying her applications for a period of disability, disability insurance benefits, and supplemental security income.   Upon a review of the administrative record and the joint memoranda submitted by the parties, and for the reasons that follow, I respectfully recommend that the Commissioner's final decision be **AFFIRMED**.

### I. Background

Plaintiff filed her applications for benefits on October 21, 2011, alleging that she has been disabled since December 31, 2006 (Tr. 14, 216-25).   Her claims were denied initially and on reconsideration, and Plaintiff requested a *de novo* hearing before an administrative law judge ("ALJ").   An administrative hearing was held by video teleconference on August 27, 2012, but no testimony was taken because Plaintiff could not speak loud enough to get a recording (Tr. 38-39).   A supplemental hearing was held on January 23, 2013, at which Plaintiff, represented by counsel, appeared and testified in person, as did a vocational expert (Tr. 14, 43).   In a decision dated March 5, 2013, the

ALJ concluded that Plaintiff was not disabled from December 31, 2006, through the date of the decision (Tr. 14-26).   The ALJ's decision became the final decision of the Commissioner when the Appeals Council declined review on December 5, 2014 (Tr. 1-3).

Plaintiff was 48 years of age on the date of the ALJ's decision (Tr. 26, 216).   She has at least a high school education, is able to communicate in English, and has past relevant work as a cashier and machine presser (Tr. 24).   Plaintiff was last insured for disability insurance purposes on June 30, 2010 (Tr. 16).

## II. The ALJ's Decision

When determining whether an individual is disabled, the ALJ must follow the five-step sequential evaluation process established by the Social Security Administration and set forth in 20 C.F.R. §§ 404.1520(a)(4) and 416.920(a)(4).   Specifically, the ALJ must determine whether the claimant (1) is currently employed; (2) has a severe impairment; (3) has an impairment or combination of impairments that meets or medically equals an impairment listed at 20 C.F.R. Part 404, Subpart P, Appendix 1; (4) can perform past relevant work; and (5) retains the ability to perform any work in the national economy. See Phillips v. Barnhart, 357 F.3d 1232, 1237-1240 (11th Cir. 2004).   The claimant bears the burden of persuasion through step four and, at step five, the burden shifts to the Commissioner.   Bowen v. Yuckert, 482 U.S. 137, 146 n. 5 (1987); Phillips, 357 F.3d at 1241 n.10.

The ALJ determined that Plaintiff has not engaged in substantial gainful activity since her alleged onset of disability date (Tr. 16).   The ALJ also found that Plaintiff's severe impairments consist of arthritis and depression (Id.).   The ALJ concluded that Plaintiff's impairments neither meet nor equal a listed impairment and leave Plaintiff with the residual functional capacity ("RFC") to,

> perform sedentary work as defined in 20 CFR 404.1567(a) and 416.967(a). The claimant needs to walk with a cane. Reaching in all directions is limited. Handling (seizing, holding and grasping) is limited. Fingering (picking, pinching and keying) is limited. She is able to reach, handle and finger frequently but not constantly. She is able to perform simple and routine tasks involving up to three-step commands.

(Tr. 17-18). Although this RFC precludes the performance of Plaintiff's past relevant work, the ALJ relied on the testimony of the vocational expert to find that Plaintiff is nevertheless able to perform a significant number of jobs in the national economy, including jobs as order clerk, food service; charge account clerk; and document preparer (Tr. 24-25). Based on these findings, the ALJ determined that Plaintiff was not disabled within the meaning of the Social Security Act from December 31, 2006, through the date of the administrative decision (Tr. 25).

### III. Standard of Review

The scope of the Court's review is limited to determining whether the ALJ applied the correct legal standards and whether the Commissioner's findings are supported by substantial evidence. Crawford v. Comm'r of Soc. Sec., 363 F.3d 1155, 1158 (11th Cir. 2004). The Commissioner's findings of fact are conclusive if supported by substantial evidence. 42 U.S.C. § 405(g). Substantial evidence is "more than a scintilla but less than a preponderance. It is such relevant evidence that a reasonable person would accept as adequate to support a conclusion." Winschel v. Comm'r of Soc. Sec., 631 F.3d 1176, 1178 (11th Cir. 2011) (citation omitted).

When the Commissioner's decision is supported by substantial evidence the district court will affirm even if the reviewer would have reached a contrary result as finder of fact, and even if the reviewer finds that the preponderance of the evidence is against the Commissioner's decision. Miles v. Chater, 84 F.3d 1397, 1400 (11th Cir. 1996).

The district court "may not decide facts anew, reweigh the evidence, or substitute our judgment for that of the [Commissioner.]" Id. "The district court must view the record as a whole, taking into account evidence favorable as well as unfavorable to the decision." Foote v. Chater, 67 F.3d 1553, 1560 (11th Cir. 1995) (per curiam); accord Lowery v. Sullivan, 979 F.2d 835, 837 (11th Cir. 1992) (the court must scrutinize the entire record to determine the reasonableness of the factual findings).

## IV. Discussion

Plaintiff complains that the ALJ erred in evaluating "the opinion of Ms. Chester's treating physician, Dr. Bandealy." (Doc. 19, p. 16). The medical opinion of a treating provider must be given controlling weight if that opinion is "well-supported by medically acceptable clinical and laboratory diagnostic techniques" and is "not inconsistent with the other substantial evidence in [the] case record." 20 C.F.R. §§ 404.1527(c)(2); 416.927(c)(2). The ALJ must give the medical opinion of a treating provider "substantial or considerable weight" unless "good cause" is shown to the contrary. Winschel, 631 F.3d at 1179 (quoting Lewis v. Callahan, 125 F.3d 1436, 1440 (11th Cir. 1997)). "Good cause exists 'when the: (1) treating physician's opinion was not bolstered by the evidence; (2) evidence supported a contrary finding; or (3) treating physician's opinion was conclusory or inconsistent with the doctor's own medical records.'" Id. (quoting Phillips, 357 F.3d at 1241). Even if the opinion of a treating provider is not entitled to controlling weight, an administrative law judge is nevertheless required to evaluate the opinion, considering such factors as (1) length of the treatment relationship and the frequency of examination; (2) the nature and extent of the treatment relationship; (3) the medical evidence and explanation supporting the opinion; (4) consistency with the record as a whole; (5) specialization in the pertinent medical issues; and (6) other factors that

tend to support or contradict the opinion. 20 C.F.R. §§ 404.1527(c)(2)-(6), 416.927(c)(2)-(6); Weekley v. Comm'r of Soc. Sec., 486 F. App'x 806, 808 (11th Cir. 2012); Logreco v. Astrue, No. 5:07-CV-80-OC-10GRJ, 2008 WL 783593, at *10 (M.D. Fla. Mar. 20, 2008). The administrative law judge "must specify what weight is given to a treating physician's opinion and any reason for giving it no weight, and failure to do so is reversible error." MacGregor v. Bowen, 786 F.2d 1050, 1053 (11th Cir. 1986) (citing Broughton v. Heckler, 776 F.2d 960, 961-62 (11th Cir. 1985)). This special treatment afforded the opinions of treating providers recognizes that "'these sources are likely to be the medical professionals most able to provide a detailed, longitudinal picture of [the claimant's] medical impairment(s).'" Reynolds-Buckley v. Comm'r of Soc. Sec., 457 F. App'x 862, 864 (11th Cir. 2012) (quoting 20 C.F.R. § 404.1527(d)(2)).

Plaintiff treated with Karamali A. Bandealy, M.D., on August 19, 2010, "for follow up on her undifferentiated collagenous vascular disease." (Tr. 924-26). Dr. Bandealy reviewed labs that he ordered at the previous visit and noted that "[a]t this time it does not seem like she has any active lupus-type illness of rheumatoid-type for which I could offer any treatment. Her main pain is in the right leg going down from the gluteal area." (Tr. 924). After her previous appointment with Dr. Bandealy, Plaintiff "called for another pain management specialist" per Dr. Bandealy's recommendation, but "they declined to see her." (Id.). Dr. Bandealy informed Plaintiff "that unfortunately I am not able to do much at this time especially since there is no active collagenous vascular problem that I need to treat." (Id.). Dr. Bandealy assessed polyarthritis/unspecified polyarthropathy or polyarthritis, multiple sites; UDCVD/MCTD/unspecified diffuse connective tissue disease; FMS; DJD knees/osteoarthrosis, unspecified whether generalized or localized, lower leg; elevated sed rate/pain in joint, multiple sites; and encounter for long-term (current) use of

other medications (Tr. 925).  Dr. Bandealy noted that he would check Plaintiff's labs, x-rays, and MRI, and he started Plaintiff on several trial medications (Tr. 925-26).

Plaintiff followed up with Dr. Bandealy on September 30, 2010 "for XR results." (Tr. 927).  Her labs were unremarkable, and "her x-rays … do not seem to show any evidence of active arthritis except for a possibility of early previa dose of changes in the MTP joints."  (Id.).  Dr. Bandealy noted that "[t]his is an extremely difficult and complicated case from pain management point of view."  (Id.).  He "continued to stress the fact that [Plaintiff] needs to get established with pain management specialist," and he adjusted Plaintiff's medications (Id.).  Dr. Bandealy also "discussed with her at length that on the basis of labs I do not have grounds to treat her condition as inflammatory arthritis but looking at the physical examination there is swelling in the MCP, PIP and wrist joints also in the MTP joints and therefore I will give her an empiric trial of anti-rheumatoid medications for the next 6 months and determine at that point if this has helped or not."  (Id.).  Dr. Bandealy also advised Plaintiff "that she needs to have psychiatric counseling as she appears very stressed out and depressed to my evaluation."  (Id.).

The ALJ summarized Dr. Bandealy's treatment notes without stating what weight was given to them:

> On August 19, 2010, the claimant had a follow up appointment with Karamali Bandealy, M.D., who is an arthritis specialist. The claimant reported severe pain in her right leg. Autoimmune studies were negative.  The claimant weighed 207 pounds.  Her blood pressure was 120/85.  The musculoskeletal exam revealed that the claimant was sore to touch all over her body.  There was some swelling in the hands.  Dr. Bandealy diagnosed the claimant with polyarthritis.  Dr. Bandealy advised the claimant to exercise at least two or three times a week.  On September 30, 2010, Dr. Bandealy noted that additional lab studies were

> unremarkable; he told the claimant that the lab studies did not support treatment for inflammatory arthritis.  Dr. Bandealy referred the claimant to pain management, and advised the claimant to seek counseling and treatment from a psychiatrist. (Exhibit C3F)

(Tr. 20).

Plaintiff argues that the ALJ erred in "fail[ing] to state what weight, if any, he accorded to Dr. Bandealy's findings and opinions" and in "ignor[ing] significant portions of Dr. Bandealy's findings and opinions."  (Doc. 19, p. 20).  Plaintiff also alleges that the ALJ "mischaracterized the evidence when evaluating [the] treating physician's opinion" by ignoring that

> Dr. Bandealy discussed with Ms. Chester "that on the basis of labs [he] did not have grounds to treat her condition as inflammatory arthritis but looking at the physical examination there is swelling in the MCP, PIP and wrist joints also in the MTP joints" and he would prescribe an empiric trial of anti-rheumatoid medications for six months to see if that helped (Tr. 927).

(Doc. 19, p. 20).  Plaintiff further argues that "Dr. Bandealy's assessment supports a more restrictive limitation than frequent" for reaching, handling, and fingering in the RFC assessment (Id. at pp. 20-21).

Assuming Dr. Bandealy qualifies as a treating physician, see Morrison v. Astrue, No. 08-80886-CIV, 2009 WL 3295113, at *22 (S.D. Fla. Oct. 13, 2009) ("In making the determination of whether a doctor is a 'treating source,' courts have held that a single examination does not suffice to establish such a relationship, but seeing a claimant at least three times and conducting testing that no other doctor has conducted may qualify the doctor as a treating physician."), I find no error in the ALJ's evaluation of the doctor's treatment notes.  It is true that the ALJ did not discuss that Dr. Bandealy found swelling in Plaintiff's wrists or that he prescribed anti-rheumatoid medications.  But, the ALJ is not

- 7 -

required to specifically refer to every piece of evidence in his decision, Dyer v. Barnhart, 395 F.3d 1206, 1211 (11th Cir. 2005), it is clear that the ALJ considered Dr. Bandealy's findings, and there is nothing in Dr. Bandealy's notes that reflect his judgment about the nature and severity of Plaintiff's impairments.   See Winschel, 631 F.3d at 1178-79 ("'Medical opinions are statements from physicians and psychologists or other acceptable medical sources that reflect judgments about the nature and severity of [the claimant's] impairment(s), including [the claimant's] symptoms, diagnosis and prognosis, what [the claimant] can still do despite impairment(s), and [the claimant's] physical or mental restrictions.' … [T]he ALJ must state with particularity the weight given to different medical opinions and the reasons therefor.").   Dr. Bandealy reported that Plaintiff had swelling in the MCP, PIP, MTP, and wrist joints, but he did not say what, if any, limitations the swelling placed on Plaintiff's ability to work.   See Moore v. Barnhart, 405 F.3d 1208, 1213 n. 6 (11th Cir. 2005) ("To a large extent, Moore questions the ALJ's RFC determination based solely on the fact that she *has* varus leg instability and shoulder separation.   However, the mere existence of these impairments does not reveal the extent to which they limit her ability to work or undermine the ALJ's determination in that regard.") (citing McCruter v. Bowen, 791 F.2d 1544, 1547 (11th Cir. 1986) ("'severity' of a medically ascertained disability must be measured in terms of its effect upon ability to work")).   In other words, the ALJ was not required to expressly weigh Dr. Bandealy's treatment notes under Winschel, even if Dr. Bandealy is considered a treating source, because the doctor's notes do not constitute a "medical opinion."

Plaintiff argues that the ALJ also erred by "fail[ing] to mention, let alone weigh," the opinion of Joseph J. Warner, M.D.   (Doc. 19, p. 26).   Plaintiff treated with Dr. Warner on

- 8 -

October 20, 2009 for headaches (Tr. 355-60).   Plaintiff provided the following summary of Dr. Warner's treatment notes:

> Physical examination revealed some swelling of the right greater than left hand particularly at the metacarpophalangeal ("MCP") joints and at the wrist (Tr. 357).   Ms. Chester's hands were painful to palpation and to passive range of motion.   *Id.*   Dr. Warner noted that Ms. Chester had a "[f]airly significant expression of pain syndrome, musculoskeletal in origin" (Tr. 358).   He opined that her headaches sounded vascular in origin although she probably had an element of chronic daily headaches.   *Id.*

(Doc. 19, p. 26).   Dr. Warner recommended a pain management consult, MRI of Plaintiff's head, and rheumatology consult, and he noted that Plaintiff's headaches should be addressed by pain management (Tr. 355-60).

Dr. Warner is not a treating physician because he did not treat Plaintiff on a regular basis before the ALJ's decision; Eyre v. Comm'r, Soc. Sec. Admin., 586 F. App'x 521, 523 (11th Cir. 2014) (citing McSwain v. Bowen, 814 F.2d 617, 619 (11th Cir. 1987)); he treated Plaintiff on one occasion and is therefore, classified as a nontreating source. See 20 C.F.R. §§ 404.1502, 416.902.   Like Dr. Bandealy, Dr. Warner's notes do not reflect his judgment about the nature and severity of Plaintiff's impairments.   See Winschel, 631 F.3d at 1178-79.   Dr. Warner noted some swelling, that Plaintiff's headaches "sounded vascular in origin," and he referred her to pain management, but he did not indicate what, if any, limitations the swelling and headaches had on Plaintiff's ability to work.   See Moore, 405 F.3d at 1213 n. 6.   And, while the ALJ noted that Plaintiff reported having headaches, the ALJ found that she exaggerates her pain and symptoms (Tr. 19, 21, 22).   Accordingly, the ALJ did not error in failing to weigh Dr. Warner's opinion.

Next, Plaintiff contends that the ALJ erred in evaluating the opinion of Felix Ortiz, Psy.D. According to Plaintiff, the "ALJ's reasons for rejecting Dr. Ortiz's opinion are not based on the correct legal standard and are not supported by substantial evidence (Doc. 19, p. 30). Plaintiff argues that the ALJ improperly discounted Dr. Ortiz's opinion for being inconsistent with Plaintiff's activities of daily living. She cites her testimony and argues that she "actually does have significant limitations in daily functioning and social functioning." (Id. at pp. 30-31).

Dr. Ortiz performed a general clinical evaluation with mental status exam on January 26, 2011 (Tr. 944-46). As a consultative examiner, Dr. Ortiz is properly classified as a nontreating source. See 20 C.F.R. §§ 404.1502, 416.902 ("Nontreating source means a physician, psychologist, or other acceptable medical source who has examined [the claimant] but does not have, or did not have, an ongoing treatment relationship with [the claimant]."). When dealing with nontreating sources, the Commissioner will simply "give more weight to the opinion of a source who has examined [the claimant] than to the opinion of a source who has not examined" the claimant. 20 C.F.R. §§ 404.1527(d)(1), 416.927(d)(1). Still, as with other "medical opinions," the ALJ must state with particularity the weight given to the medical opinion of a nontreating source and the reasons for assigning that weight. Winschel, 631 F.3d at 1179 (quoting Sharfarz v. Bowen, 825 F.2d 278, 279 (11th Cir. 1987)). "'In the absence of such a statement, it is impossible for a reviewing court to determine whether the ultimate decision on the merits of the claim is rational and supported by substantial evidence.'" Id. (quoting Owens v. Heckler, 748 F.2d 1511, 1516 (11th Cir. 1984)).

The ALJ summarized and evaluated Dr. Ortiz's report and opinion as follows:

> On January 26, 2011, the claimant participated in a consultative psychological evaluation with Felix Ortiz, Psy.D. The claimant was on time, and she was dressed and groomed appropriately.  Ms. Chester's gait and posture were unremarkable.  The claimant was cooperative, but she appeared to be drowsy.  The claimant seemed to have difficulty giving specific information and specific dates.  Ms. Chester said she was "tired and depressed."  The claimant reported several symptoms of depression including, depressed mood, loss of interest in activities, irritability and loss of energy.  The claimant said she had the symptoms for several years.  Dr. Ortiz wrote that the claimant's mental symptoms were moderate.  The claimant said she was not on any medication because she had no insurance.  She said she was prescribed medication.  The claimant said she was able to bathe, dress and toilet herself but occasionally needed help because of her arthritis.  The claimant said she was able to manage money and shop independently.  The claimant said she attended regular classes and graduated from high school.  The claimant's attention and concentration were fair.  Speed of processing and mental computation were limited.  Dr. Ortiz diagnosed the claimant with major depressive disorder, recurrent, mild and borderline intellectual functioning, provisional.  Dr. Ortiz assigned a GAF (Global Assessment of Functioning) score of 45.  Dr. Ortiz opined that the claimant's mental and physical symptoms seemed to be severely impacting her activities of daily living, vocational performance, and interpersonal interactions.  (Exhibit C4F)  Some weight is accorded to Dr. Ortiz' observations regarding the claimant's gait, grooming and manner of relating because those observations are consistent with the totality of the evidence. However, no weight is accorded to Dr. Ortiz' opinion that the claimant's mental and physical symptoms severely impact her activities of daily living, vocational performance and interpersonal interactions because this opinion is inconsistent with the claimant's broad range of activities of daily living, adequate social functioning and ability to concentrate and persist well enough to shop and manage food stamp benefits.

(Tr. 22-23 (footnote omitted)).   The ALJ was sufficiently specific as to the weight assigned to Dr. Ortiz's opinion and the reasons for assigning that weight.   The ALJ discounted a portion of Dr. Ortiz's opinion because it was inconsistent with Plaintiff's activities of daily living, adequate social functioning, and ability to concentrate and persist

- 11 -

well enough to shop and manage food stamp benefits (Tr. 23). The ALJ explained that Plaintiff is able to feed, bathe and clothe herself without prompting, supervision, or assistance; she is able to live with her sister and brother-in-law and interact appropriately with medical personnel; she is able to communicate coherently and effectively, has a valid driver's license, can use public transportation; and she can make and keep appointments (Tr. 17, 22). Plaintiff disagrees with the ALJ's assessment and points to testimony that she has difficulty writing, cannot open a jar of peanut butter, and has difficulty getting along with others (Doc. 19, pp. 30-31). The ALJ considered Plaintiff's subjective complaints and found them not entirely credible, and it is not improper for an ALJ to consider whether a medical opinion is inconsistent with a claimant's activities of daily living and social functioning. I find that substantial evidence supports the ALJ's findings regarding Plaintiff's activities of daily living, social functioning, and concentration and persistence. Accordingly, I find no error in the ALJ's evaluation of Dr. Ortiz's opinion.

Plaintiff also argues that the ALJ's failure to properly weigh the opinions of Drs. Bandealy, Warner, and Ortiz renders the ALJ's determination of Plaintiff's credibility unsupported by substantial evidence (Doc. 19, pp. 41-42). Having found no error in the ALJ's evaluation of the opinions and treatment notes of Drs. Bandealy, Warner, and Ortiz, I find no merit in Plaintiff's related challenge to the ALJ's credibility determination.

Plaintiff alleges that she submitted what she characterizes as "a large amount of evidence showing that she has limitations from fibromyalgia, headaches, and breathing impairments." (Id. at p. 35). She contends that the ALJ erred by not explaining how he accounted for these impairments and the combined effects of all her impairments when evaluating her disability (Id. at pp. 33-38).

I begin with Plaintiff's complaints of breathing problems. She points to sporadic treatment notes from 2007 to 2012 with diagnoses and findings of respiratory failure (Tr. 403), infiltrate in the lungs (Tr. 457-59), asthma (Tr. 975, 985, 994), influenza (Tr. 1042), shortness of breath (Tr. 1042), and upper respiratory infection (Tr. 1042), and argues that the ALJ should have included in the RFC determination "[l]imitations in the ability to breathe." (Doc. 19, pp. 37-38). Plaintiff has not, however, pointed to any opinion evidence of limitations in her ability to breathe. As discussed *supra*, Plaintiff's diagnoses of influenza, asthma, or shortness of breath, for example, say nothing about the severity of the diagnoses or whether Plaintiff has resulting work limitations. See e.g., Colbert v. Astrue, No. 3:07-CV-669-J-HTS, 2008 WL 2329419, at *3 (M.D. Fla. June 4, 2008) ("[A] 'mere diagnosis ... says nothing about the severity of the condition.'"); Tr. 975 (diagnosing "Asthma – stable")).

The medical records show that on April 22, 2009, while treating Plaintiff for pain in her neck, right leg, and right side of her jaw, Dr. Yang H. Tsai wrote "Possible fibromyalgia." (Tr. 352). On May 19, 2009, a physician at the Halifax Health Emergency Department made a diagnosis of "Fibromyalgia Flare up." (Tr. 617, 623). Another Halifax Health chart shows that on September 16, 2009, Plaintiff appeared complaining of acute, chronic pain (Tr. 653). Under "History of Present Illness" the chart states:

> The patient has a history of fibromyalgia and presents to the
> emergency room complaining of pain. This is one or her
> frequent complaints when she comes in and she does so very
> often. No fever or chills, no cough. No trauma. No
> numbness or tingling, weakness or paralysis
> Location: Right side of her body
> Quality: Cramping
> Severity: Mild
> Timing: Intermittent

>           Duration: Several days
>           Context: Fibromyalgia
>           Modifying Factors: None
>           Associated sign and symptoms: None

(Id.).   On February 5, 2010, Plaintiff received a diagnosis of "HNP cervical, lumbar spine, fibromyalgia."   (Tr. 684).   On April 1, 2010, Dr. John Penington wrote that Plaintiff had come in complaining of "exacerbation of her fibromyalgia."   (Tr. 690).   He noted that she had "no acute findings," and that "[a]dditional studies are not felt to be required at this time."   (Id.).   On May 4, 2011, Dr. Karla McNish made four diagnoses, one of which was Fibromyalgia (Tr. 992, 994).   On August 22, 2011, a physician at Halifax Health Center wrote that Plaintiff was complaining of hoarseness, joint and body aches and pain (Tr. 981).   Among other things, the doctor diagnosed "Joint aches + Fibromyalgia."   (Id.).   , On October 3, 2011, Plaintiff presented at Halifax Health Centers complaining of headaches, fatigue, joint pain, and diarrhea (Tr. 976).   The doctor made a note of Fibromyalgia (Id.).   A January 2, 2013 patient summary for Plaintiff includes assessments for "729.1 Primary fibromyalgia syndrome; 401.9 Essential hypertension; and 214.9 Lipoma."   (Tr. 1138).   On January 31, 2012 Dr. McNish once again listed Fibromyalgia as one of multiple diagnoses of Plaintiff (Tr. 1012).   On August 16, 2012, Dr. Matthew J. Kocisko wrote "[d]ifferential diagnosis includes fibromyalgia, lupus, rheumatoid arthritis, nonspecific myalgias, chronic pain syndrome, ACS, pericardis."   (Tr. 1059).

   "[T]he 'severity' of a medically ascertained disability must be measured in terms of its effect upon ability to work, and not simply in terms of deviation from purely medical standards of bodily perfection or normality."   McCruter v. Bowen, 791 F.2d 1544, 1547 (11th Cir. 1986).   While the word "fibromyalgia" appears multiple times in the record,

there is no medical evidence that it adversely impacts Plaintiffs' ability to work.   To the contrary, on at least one occasion, the doctor who treated Plaintiff determined that the severity was "mild."   (Tr. 653).   Plaintiff's argument relies on Dempsey v. Comm'r of Soc. Sec., 454 F. App'x 729 (11th Cir. 2011).[1]   In Dempsey, one of the claimant's treating doctors diagnosed fibromyalgia and another treating doctor opined that claimant would miss four days of work per month due to impairments and treatment.   The administrative law judge failed to identify fibromyalgia as one of claimant's severe impairments or explicitly address fibromyalgia in making claimant's RFC assessment.  The Eleventh Circuit reversed based upon the administrative law judge's failure to explain the weight given to different medical opinions.   The court went on to say that the Commissioner must consider all of a claimant's impairments, including non-severe impairments when making an RFC assessment, and that on remand, the Commissioner could "consider the treating physicians' opinions and Dempsey's fibromyalgia …."   (Id. at *4 n. 8).

First, unlike Dempsey, no treating provider has diagnosed Plaintiff with fibromyalgia, and there are no opinions concerning the effect of Plaintiff's fibromyalgia on her ability to work.   Second, the ALJ did not completely ignore the issue.   In his decision, the ALJ noted that during a December 15, 2009 medical visit, "[m]ost fibromyalgia tender points were positive."   (Tr. 20).   Third, and perhaps most importantly, the ALJ did not ignore Plaintiff's complaints of pain.   After thoroughly discussing Plaintiff's complaints, the ALJ concluded that Plaintiff "exaggerates pain and symptoms," and that she "is not a credible reporter of symptoms and limitations."   The

---

[1] This is an unpublished decision, it is not considered binding precedent but may be cited as persuasive authority.   CTA 11 Rule 36-2.

- 15 -

ALJ is charged with making these determinations and where, as here, they are supported by substantial evidence, the Court should accept the ALJ's findings even if it disagrees.

## V. Recommendation

For these reasons I **RESPECTFULLY RECOMMEND** that the Commissioner's final decision be **AFFIRMED**, and that the Clerk be directed to enter judgment accordingly and **CLOSE** the file.

## NOTICE TO PARTIES

A party has fourteen days from this date to file written objections to the Report and Recommendation's factual findings and legal conclusions.  A party's failure to file written objections waives that party's right to challenge on appeal any unobjected-to factual finding or legal conclusion the district judge adopts from the Report and Recommendation.  See 11th Cir. R. 3-1.

**RESPECTFULLY RECOMMENDED** in Orlando, Florida on December 11, 2015.

THOMAS B. SMITH
United States Magistrate Judge

Copies furnished to:

    Presiding United States District Judge
    Counsel of Record